UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

UNITED STATES OF AMERICA,

    -against-                                                    20 CR 353 (CM)

WILLIAM MURRELL,

        Defendants.

----------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  3/11/21

## DECISION AND ORDER GRANTING A HEARING
## ON DEFENDANT'S MOTION TO SUPPRESS

McMahon, C.J.:

William Murrell is charged in a five-count indictment: one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), three counts of possession of narcotics with intent to distribute, in violation of 21 U.S.C. § 841, and one count of possession of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

Before the Court is Murrell's motion to suppress the physical evidence seized by the police at the time of his arrest. Murrell says that he "was subjected to an invasive and unlawful police stop during which law enforcement, not identifying themselves as police, chased and arrested him." Def. Memo at 1. He claims that his "seizure was not predicated upon valid reasonable suspicion or probable cause," and asks that "the Court . . . [] suppress all physical evidence obtained as a result of the officers' unconstitutional conduct. *See generally Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963)." *Id.*

1

It is the Government's position that the Court should deny the motion without a hearing because "the facts before the Court are sufficient to establish that the officers lawfully seized and searched the defendant." Govt. Memo at 1.

I am ordering a hearing so that I can get the facts straight.

### The Government's Version of Events

Shortly after midnight, on November 22, 2019, two New York City Police Officers were on patrol in an unmarked car, driving eastbound on 161st Street in the Bronx. (Docket No. 1 ("Compl.") ¶ 10(a)). At approximately 12:10 a.m., the Officers observed an individual later identified as Murrell, together with two other individuals, standing on the sidewalk in front of a store near the intersection of 161st Street and Melrose Avenue. (*Id.*). One of the three individuals was talking particularly loudly and animatedly. (*Id.*). The Officers slowed their vehicle as they approached the group; they pulled out of the traffic lanes into the street's center lane. (*Id.* ¶ 10(b)). Officer-1 was driving and Officer-2 was in the passenger seat, closest to the group. (*Id.*).

Officer-2 rolled down his window and asked how they were doing. (*Id.* ¶ 10(c)). The animated individual responded that they did not have any guns or drugs on them, and lifted his sweatshirt to show his waistline. (*Id.*). Meanwhile, Murrell turned away from the Officers and began slowly heading west on 161st Street. (*Id.*). The Officers observed that Murrell was wearing a knee-length fur-lined coat, and that the right side of his coat was weighed down, apparently by something in the coat's right pocket. (*Id.*).

The Officers backed up a short distance to speak to Murrell. (*Id.* ¶ 10(d)). Officer-2, still in the vehicle, asked Murrell where he was going. Murrell responded that he was going home. (*Id.*). Officer-2 told Murrell that he should be careful, as there had been robberies in the

2

area and Murrell was wearing jewelry. (*Id.*).

The officers then opened their car doors and began to exit the vehicle. At that point, Murrell tucked his right arm to his right side and began sprinting away, running eastbound on 161st Street. (*Id.*).

The Officers got back into their car and pursued Murrell as he turned right on to Melrose Avenue, then turned right again onto 160th Street. (*Id.* ¶ 10(e)). When the Officers caught up him, Murrell doubled back to Melrose Avenue, with the Officers in pursuit. (*Id.*). At some point during this course of events (it is not clear when), the Officers heard one of the other two individuals who had been with Murrell on 161st Street say that Murrell has a gun. (*Id.*).

When the unmarked vehicle reached Melrose Avenue, Officer-2 got out of the car and pursued Murrell on foot. The officer tackled Murrell in front of 860 Melrose Avenue; he restrained Murrell by lying on top of him. (*Id.*). Office 2 patted Murrell down while Officer-1 began to search the nearby area in case Murrell had discarded a weapon. (*Id.* ¶ 10(f)). Officer-2 recovered a handgun from Murrell's right coat pocket. (*Id.*).

At that point, Murrell was then placed under arrest and searched incident to his arrest. (*Id.*¶ 10(g)). The search uncovered drugs, drug paraphernalia, and large quantities of dollar bills from Murrell's person and from his backpack. (*Id.* ¶ 10(g)). It is not clear from the record where the backpack was located.

Murrell's Affidavit in Support of His Motion

Murrell filed an affidavit in support of his motion that contests the Government's version of events that led to his arrest:

3. Shortly before my arrest, I had been standing on the sidewalk on 161st Street casually talking to two men.

3

4. I was not doing anything suspicious on the sidewalk. There was no reason to believe that I was involved in criminal activity. I was simply standing on a lit sidewalk in public view talking to two other people. While I stood on the sidewalk, a car driving down 161st Street slowed down and pulled to a stop across the street from where I was standing. Two men inside the car began talking to me and the other men standing near me on the sidewalk. The men asked whether anybody had weed.

5. The car reversed down the street and pulled over on the same side of the street where I was standing. The men asked me several questions about my jewelry, including where I got it, how much I paid for it, and whether it was real. The men then told me to be careful because I was wearing jewelry and there had been a lot of robberies in the neighborhood.

6. The men in the car did not identify themselves as police officers. I did not see them wearing anything that identified themselves as law enforcement. The car they were in was unmarked.

7. The man in the passenger seat opened his car door and started to get out. Concerned about the numerous questions about my jewelry, I instinctively ran away down the street.

8. I kept running until I heard the men chasing me and shouting at me. One of the men caught up to me, shouted aggressively at me, and told me to stop.

9. I immediately submitted to the man's authority and did not resist in any way. The man searched me while I was still on the ground and placed a handgun on the sidewalk. I was subsequently placed in handcuffs.

10. Once handcuffed, the officers led me to the backseat of a police car and drove me to the precinct. The officers also searched my backpack and belongings.

11. Due to the pandemic and my detention, I was not able to sign this declaration. I have given my attorney permission to sign on my behalf.

Murrell Affidavit ¶¶ 3-11.

### This is a *Terry* Stop Case

When Officer-2 tackled and searched Murrell on Melrose Avenue, the officer had no evidence that Murrell was committing or had committed a crime,

4

and consequently, no probable cause to arrest him. *See* Complaint, supra. Thus, for the seizure and search of Murrell to be constitutional, Officer-2 must have had a reasonable suspicion that Murrell might have been engaged in criminality, and he must have conducted the search in which the gun was located based on a reasonable belief that he might be armed and dangerous. *See Terry* v. *Ohio*, 392 U.S. 1, 30–31 (1968).

It is well established that a police officer may conduct a brief "investigative detention" or "*Terry* stop" of a person to investigate possible criminal behavior, if, at the time the officer effects the stop, the officer has "'reasonable suspicion' to believe that criminal activity has occurred or is about to occur." *United States* v. *Tehrani*, 49 F.3d 54, 58 (2d Cir. 1995); *see also Terry* v. *Ohio*, 392 U.S. 1, 30–31 (1968). Reasonable suspicion exists where officers are "aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion." *United States* v. *Brignoni-Ponce*, 422 U.S. 873, 884 (1975). "To support an accompanying pat down, there must be a reasonable basis to think 'that the person stopped is armed and dangerous.'" *United States v. Bailey*, 743 F.3d 322, 332 (2d Cir. 2014) (quoting *Arizona v. Johnson*, 555 U.S. 323, 326–27 (2009)).

Although a "hunch" alone does not suffice, *Terry* v. *Ohio*, 392 U.S. 1, 27 (1968), the standard requires "'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." *Navarette* v. *California*,

5

134 S. Ct. 1683, 1687 (2014) (quoting *United States* v. *Sokolow*, 490 U.S. 1, 7 (1989)). When evaluating whether the reasonable suspicion standard has been met, courts "must view the totality of the circumstances 'through the eyes of a reasonable and cautious police officer on the scene.'" *Bailey*, 743 F.3d at 332 (quoting *United States* v. *Bayless*, 201 F.3d 116, 133 (2d Cir. 2000)). This includes considering law enforcement officers' "own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

### *The Court Will Hold a Hearing on Murrell's Motion*

Murrell's affidavit raises a "sufficiently definite, specific, detailed, and nonconjectural" factual basis for suppression. *See United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992). Murrell affirms that he was hanging out on a street corner speaking with friends when, for no reason, the police seized and searched his person; directly contradicting the Government's version of events as set forth in the criminal complaint. In his reply brief, Murrell lists, quite succinctly, the disputed issues of material fact and corresponding open questions that the Court must answer in order to resolve his motion: "Did Mr. Murrell engage in 'nervous, evasive behavior'? Did Mr. Murrell know that the police officers were in fact police officers? Did the police officers receive reliable information that Mr. Murrell had a gun? Did Mr. Murrell's encounter with law enforcement take place in a high-crime area? Was Mr. Murrell's right side weighed down by

an object? Did he tuck his arm to his right side before running away?." Murrell Reply at 1-4. The court can think of one or two other issues I would like cleared up as well.

Accordingly, the Court will hold a hearing to resolve the factual dispute defendant has raised in his affidavit and require the Government to defend the lawfulness of the officer's actions. The hearing will be held at the next scheduled in-person conference, which is scheduled for March 23, 2021, at 2:00 p.m.

This constitutes the decision and order of the Court

March 11, 2021

Chief District Court Judge

BY ECF TO ALL COUNSEL

7